**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-00863-STV

JOHN COLLINS,

Plaintiff,

v.

AUSTIN BARELA,

Defendant.

---

**ORDER**

---

Magistrate Judge Scott T. Varholak

This matter comes before the Court on Defendant Austin Barela's Motion to Dismiss (the "Motion"). [#15] The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [##12, 13] This Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Motion is **GRANTED**.

## I. BACKGROUND[1]

This civil action arises out of an encounter between Plaintiff John Collins and Defendant Austin Barela—a patrol officer with the City of Denver—on March 25, 2019.

[1] The facts are drawn from the allegations in the Amended Complaint [#5], which must be taken as true when considering a motion to dismiss. *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir.2011)).

[#5] On that date, Plaintiff parked his car on a residential street in Denver, Colorado. [*Id.* at ¶¶ 3, 7] Plaintiff then exited the vehicle, walked to the front passenger door, and inspected its interior panel which needed repair. [*Id.* at ¶¶ 8-9] As Plaintiff was repairing the interior portion of the door, he was approached by Defendant. [*Id.* at ¶ 10] Defendant asked Plaintiff whether he had identification on him, and Plaintiff responded that he did. [*Id.* at ¶¶ 11-12] Defendant asked again whether Plaintiff had identification, at which point Plaintiff asked his children, who were inside the vehicle, to begin recording the police contact. [*Id.* at ¶¶ 13-14]

After asking his children to record the encounter, Plaintiff politely responded to Defendant that he was not doing anything but was simply fixing a door panel. [*Id.* at ¶ 14] Defendant stated that he had seen Plaintiff driving earlier in the day—implying that providing identification thus was compulsory. [*Id.* at ¶¶ 15-16] Defendant twice more asked Plaintiff for identification and then also asked Plaintiff for his name, which Plaintiff provided. [*Id.* at ¶¶ 18-19] Defendant responded by again stating that he "need[ed]" Plaintiff's identification. [*Id.* at ¶ 19] Plaintiff asked why Defendant needed his identification, and Defendant responded: "Because I just told you, for driving the car." [*Id.* at ¶ 20] Defendant explained that he had observed Plaintiff get into his vehicle at a commercial business, lawfully leave, and then park his vehicle on the street where the encounter began. [*Id.* at ¶ 21] As a result of these observations, Defendant told Plaintiff that he "need[ed]" Plaintiff's identification. [*Id.*]

Defendant then continued by stating: "I'm not gonna ask you again, man. If you don't give me your ID, I'm putting you in handcuffs." [*Id.* at ¶ 22] Plaintiff began to ask a question when Defendant "escalated the encounter, approached [Plaintiff] and his

children, placed his hands on [Plaintiff's] shoulders, grabbed [Plaintiff's] arms and wrists, and placed [Plaintiff] in handcuffs secured behind his back." [*Id.* at ¶ 23] As he was being placed in handcuffs, Plaintiff said that the handcuffing was for "nothing," and Defendant responded that he was handcuffing Plaintiff because Plaintiff was not providing his identification. [*Id.* at ¶¶ 26-27] At all times during the encounter, Plaintiff maintained his composure, acted respectfully, and maintained an even temperament without verbalizing any threat or disparaging comment. [*Id.* at ¶¶ 24-25]

After placing Plaintiff in handcuffs, Defendant asked Plaintiff where his identification was located and Plaintiff indicated toward the interior of his vehicle. [*Id.* at ¶ 28] A passenger provided Plaintiff's identification and Defendant then walked Plaintiff back to Defendant's patrol vehicle. [*Id.* at ¶¶ 28, 30] When they arrived at the patrol vehicle, Plaintiff stated that he was not doing anything but working on the door. [*Id.* at ¶ 31] Defendant responded: "Well I asked for your ID, you don't want to give ID. The only people that don't give . . . ID is people who try not to say who they are, man." [*Id.* at ¶ 32] Defendant also complained that Plaintiff had passengers in the car start recording the encounter rather than just handing Defendant his identification. [*Id.* at ¶ 35] Defendant further described Plaintiff's efforts to record the event as Plaintiff "be[ing] funny." [*Id.* at ¶¶ 37-39]

Defendant then performed an exterior search of Plaintiff's sweatpants and did not find anything. [*Id.* at ¶ 40] He then escorted Plaintiff to the back of the patrol car, stating: "It's not cool. You're not doing what I'm telling you to do. . . . If you just go here [handing identification], sir, here's my ID and I come back to the car and [it's] completely different." [*Id.* at ¶¶ 41-42] Defendant then arrested Plaintiff for failure to identify. [*Id.* at ¶ 43]

Ultimately, all charges against Plaintiff were dropped "due to some reasonable suspicion issues." [*Id.* at ¶ 44]

Plaintiff initiated this action on March 24, 2021. [#1] The Amended Complaint alleges three claims for relief, all brought pursuant to 42 U.S.C. § 1983: (1) false arrest [#5 at ¶¶ 48-50], (2) excessive force [*id.* at ¶¶ 51-53], and (3) retaliation in violation of the First Amendment [*id.* at ¶¶ 54-56]. On May 24, 2021, Defendant filed the instant Motion seeking to dismiss the excessive force and retaliation claims. [#15] Plaintiff has responded to the Motion [#20], Defendant has replied [#23], and Plaintiff has filed a surreply [#25].

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims

across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

**III. ANALYSIS**

Through the Motion, Defendant seeks dismissal of the Amended Complaint's Second Claim (excessive force) and Third Claim (retaliation). [#15] Specifically, Defendant maintains that he is entitled to qualified immunity, because the Amended Complaint "fails to set forth sufficient allegations to demonstrate that Defendant violated his clearly established Fourth Amendment and First Amendment rights." [*Id.* at 3] The Court begins by setting forth the legal standard for the application of the qualified immunity doctrine and then applies this doctrine to Plaintiff's Second and Third Claims.

**A. Qualified Immunity**

The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Once a defense of qualified immunity is asserted, "the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, *and* (2) that the right was "clearly established" at the time of the challenged conduct.'" *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (emphasis in

original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001).

The requirement that the right be clearly established presents a "demanding standard" intended to ensure the protection of "all but the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In determining whether the constitutional right was clearly established at the time of the misconduct, the Tenth Circuit has explained:

> A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. Although plaintiffs can overcome a qualified-immunity defense without a favorable case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate. The dispositive question is whether the violative nature of the *particular conduct* is clearly established. In the Fourth Amendment context, the result depends very much on the facts of each case, and the precedents must squarely govern the present case.

*Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (quotations and citations omitted). The Supreme Court has "not yet decided what precedents—other than [its] own—qualify as controlling authority for purposes of qualified immunity." *Wesby*, 138 S. Ct. at 591 n.8. The Tenth Circuit, however, has stated that "[o]rdinarily this standard requires either that there is a Supreme Court or Tenth Circuit decision on point, or that the 'clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains.'" *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017) (quoting *Klen v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011)).

The Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 138 S. Ct. at 590 (quotation omitted). "[T]he 'specificity' of the rule is especially important in the Fourth Amendment context." *Id.* (quotation omitted).

**B. Claim Two – Excessive Force**

"[C]laims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Supreme Court has held that a small amount of force, such as an arrest where an individual is handcuffed, placed in a police vehicle, and taken to the police station, while inconvenient and embarrassing, does not rise to the level of excessive force. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354-55 (2001); *see also Fisher v. City of Las Cruces*, 584 F.3d 888, 896 (10th Cir. 2009) ("[I]n nearly every situation where an arrest is authorized, or police reasonably believe public safety requires physical restraint, handcuffing is appropriate."). Moreover, the Fourth Amendment "does not require [police] to use the least intrusive means in the course of a detention, only reasonable ones," *Fisher*, 584 F.3d at 894 (alteration in original) (quotation omitted), and "[h]andcuffing inevitably involves some use of force . . . and it almost inevitably will result in some irritation, minor injury, or discomfort where the handcuffs are applied," *United States v. Rodella*, 804 F.3d 1317, 1328 (10th Cir. 2015) (citation and quotation omitted). Nonetheless, "[i]n some circumstances, unduly tight handcuffing can constitute excessive force where a plaintiff alleges some actual injury from the handcuffing and alleges that an

officer ignored a plaintiff's timely complaints (or was otherwise made aware) that the handcuffs were too tight." *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007); *see also Zartner v. Miller*, 760 F. App'x 558, 561 (10th Cir. 2019) (noting that to "trigger liability for unduly tight handcuffs," the plaintiff must show "an actual injury," "a causal link between this injury and the unduly tight handcuffs," and "the officer's knowledge that the handcuffs were too tight"). Under Tenth Circuit law, "in a handcuffing case 'to recover on an excessive force claim, a plaintiff must show: (1) that the officers used greater force than would have been reasonably necessary to effect a lawful seizure, and (2) some actual injury caused by the unreasonable seizure that is not de minimis, be it physical or emotional.'" *Fisher*, 584 F.3d at 894 (quoting *Cortez*, 478 F.3d at 1129 n.25).

Here, Plaintiff has not alleged any injury from the handcuffing and, as a result, he cannot maintain a claim for excessive force based upon the handcuffing. *Id.*; *Zartner*, 760 F. App'x at 561. In response, Plaintiff argues that his excessive force claim is not based upon a claim of overly tight handcuffing but, instead, "his complaint relates to having handcuffs locked around his wrists knowing that [Defendant] was violating clearly established law and having no ability to predict [Defendant's] intensions [sic]." [#25 at 5] Plaintiff's excessive force claim thus appears to be premised upon the argument that any force used by Defendant was excessive because Defendant lacked probable cause to arrest Plaintiff.[2] [*Id.*; *see also* #20 at 5 ("[Defendant's] inability to articulate a justification

---

[2] Plaintiff also contends that Defendant used excessive force prior to placing the handcuffs on Plaintiff by "physically grabb[ing] [Plaintiff] without any lawful basis, and without any reason to believe that [Plaintiff] would not voluntarily submit to restraints if given a verbal command." [#25 at 3] The sole allegation in the Amended Complaint supporting this contention states merely that Defendant "approached [Plaintiff] and his children, placed his hands on [Plaintiff's] shoulders, grabbed [Plaintiff's] arms and wrists, and placed [Plaintiff] in handcuffs secured behind his back." [#5, ¶ 23] The Court finds

for any use of force is dispositive of the qualified immunity analysis for excessive force claims.").

The Tenth Circuit has rejected Plaintiff's argument. The Tenth Circuit has made clear that in cases in which a plaintiff, like Plaintiff here, alleges both an unlawful arrest (Plaintiff's Claim One) and excessive force (Plaintiff's Claim Two), "if the district court concludes the arrest was unlawful, the court *may not* automatically find any force used in effecting the unlawful arrest to be excessive." *Romero v. Story*, 672 F.3d 880, 890 (10th Cir.2012) (emphasis in original); *see also Mglej v. Gardner*, 974 F.3d 1151, 1165 (10th Cir. 2020) (holding that "district court erred to the extent it linked this excessive force claim to [the plaintiff's] false-arrest claim, by holding that, '[b]ecause [the defendant officer] lacked probable cause to believe a crime had occurred, any effort to restrain [the plaintiff's] liberty would have been excessive.'" (quoting the district court opinion)). Rather, the Court is required to assess the excessive force claim "under the assumption that the arrest was lawful."[3] *Romero*, 672 F.3d at 890.

Assuming that Defendant's arrest was lawful, the Court does not find his use of force excessive. The Supreme Court has held that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. And the Tenth Circuit

---

this allegation insufficient to plausibly allege that Defendant "physically assaulted" Plaintiff prior to placing him in handcuffs. [*See* #25 at 3] Instead, the allegation appears to merely describe the actions Defendant undertook to place handcuffs on Plaintiff. As the Tenth Circuit has explained, "[h]andcuffing inevitably involves some use of force" and only rises to the level of "excessive force" when accompanied by an actual physical injury, which Plaintiff has not alleged. *Rodella*, 804 F.3d at 1328.

[3] However, "[i]f the plaintiff can prove that the officers lacked probable cause, he is entitled to damages for the unlawful arrest, which includes damages resulting from any force reasonably employed in effecting the arrest." *Cortez*, 478 F.3d at 1127.

has noted that "in nearly every situation where an arrest is authorized . . . handcuffing is appropriate." *Fisher*, 584 F.3d at 896. Given that Plaintiff has failed to identify any less intrusive means of effectuating Plaintiff's arrest under the assumption that the arrest was lawful, Plaintiff has not plausibly alleged that Defendant's use of force was excessive.[4] Accordingly, the Court GRANTS the Motion to the extent it seeks to dismiss Claim Two.

**C. Claim Three – First Amendment Retaliation**

To state a First Amendment retaliation claim against a government official, a plaintiff must prove three elements:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). Defendant challenges both the second and third elements.[5] [#15 at 5-6]

---

[4] Similarly, Plaintiff argues that Defendant used excessive force by "physically isolating [Plaintiff] from his family" but appears to do so based solely on the alleged lack of probable cause to make the arrest and without identifying any less intrusive means that Defendant should have used assuming the arrest had been lawful. At a minimum, Plaintiff has failed to identify relevant caselaw that would have clearly established that Defendant's actions in handcuffing Plaintiff and removing him from the scene violated Plaintiff's Fourth Amendment rights. As a result, Plaintiff is entitled to qualified immunity on that claim. *See Mglej*, 974 F.3d at 1166; *Quinn v. Young*, 780 F.3d 998, 1015 (10th Cir. 2015) (concluding defendants were entitled to qualified immunity because plaintiffs "ha[d] not carried their burden of identifying cases that constitute clearly established law on these facts").

[5] With respect to the first element, Defendant challenges whether the right was clearly established [#15 at 6-8; #23 at 5-6], but, beyond that, does not argue that Plaintiff was not engaged in constitutionally protected activity when he asked his children to record the incident. [*See* #23 at 3 (acknowledging that "Defendant argues that the second and third elements have not been established and made no argument as to the first element")] The Court addresses the clearly established nature of the right below.

Defendant argues that Plaintiff cannot satisfy the second element because "there is no allegation that Plaintiff was in any way deterred from filming [Defendant's] conduct." [#15 at 6] This argument applies the wrong legal standard. The standard for evaluating whether the defendant's actions have a chilling effect is objective, not subjective. *Shero*, 510 F.3d at 1203. "Thus, the relevant inquiry is not whether the plaintiff was actually deterred from exercising his constitutional rights, but whether a person of ordinary firmness in the plaintiff's position would have been so deterred." *Jenner v. Brightwell*, No. 14-CV-00916-RBJ-KMT, 2016 WL 11383921, at *5 (D. Colo. Feb. 25, 2016), *report and recommendation adopted*, 2016 WL 1248663 (D. Colo. Mar. 29, 2016); *see also Eaton v. Meneley*, 379 F.3d 949, 954–55 (10th Cir. 2004) (finding that "the objective standard permits a plaintiff who perseveres despite governmental interference to bring [a retaliation claim]"). And "it is clear that [Defendant's] pursuit of an arrest without probable cause would chill a person of ordinary firmness from continuing to engage in protected activity." *Esparza v. Bowman*, 523 F. App'x 530, 536 (10th Cir. 2013) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)). The Court thus concludes that Plaintiff has plausibly alleged the second element of his retaliation claim.

The Court likewise concludes that Plaintiff has plausibly alleged the third element of his retaliation claim. The Supreme Court has made clear that, in a First Amendment retaliatory arrest case, "if the plaintiff establishes the absence of probable cause, then the [*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)] test governs: The plaintiff must show that the retaliation was a substantial or motivating factor behind the [arrest], and, if that showing is made, the defendant can prevail only by showing that the [arrest] would have been initiated without respect to retaliation." *Nieves v. Bartlett*, 139

S. Ct. 1715, 1725 (2019) (quotation omitted). Here, Plaintiff alleges that he was arrested shortly after he told his children to videotape the incident and that Defendant allegedly "complained that [Plaintiff] had passengers in the car start recording the encounter rather than just handing [Defendant] his [identification]." [#5 at ¶ 35] Plaintiff further alleges that Defendant described Plaintiff's efforts to record the event as Plaintiff "be[ing] funny." [*Id.* at ¶¶ 37-39] Based on these allegations and drawing all reasonable inferences in favor of Plaintiff, the Court concludes that Plaintiff has plausibly alleged that retaliation was a substantial or motivating factor behind the arrest. *Sexton v. City of Colorado Springs*, 530 F. Supp.3d 1044, 1067 (D. Colo. 2021) ("The Court finds that the close temporal proximity between the protected speech and arrest, combined with the absence of probable cause, and the fact that [the officer] did not turn on his police lights until plaintiff flipped him off the second time, is sufficient to plead that a retaliatory motive was the 'but-for' cause of [the officer's] arrest.").

Nonetheless, the Court agrees with Defendant that Plaintiff has not satisfied his burden of demonstrating that the right at issue was clearly established at the time of the incident. According to Plaintiff, "[b]y March of 2019, the right to record police activity was clearly established in six circuits." [#20 at 8 (citing *Turner v. Driver*, 848 F.3d 679, 688 (5th Cir. 2017) (concluding that "First Amendment principles, controlling authority, and persuasive precedent demonstrate that a First Amendment right to record the police does exist, subject only to reasonable time, place, and manner restrictions"); *Fields v. City of Philadelphia*, 862 F.3d 353, 360 (3d Cir. 2017) (finding that "under the First Amendment's right of access to information[,] the public has the commensurate right to record—photograph, film, or audio record—police officers conducting official police activity in

public areas"); *Am. Civ. Liberties Union of Ill. v. Alvarez*, 679 F.3d 583, 597-600 (7th Cir. 2012) (finding that "eavesdropping statute prohibit[ing] nonconsensual audio recording of public officials performing their official duties in public" interfered with exercise of First Amendment rights); *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011) (finding "a constitutionally protected right to videotape police carrying out their duties in public"); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) ("The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest"); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995) (finding "a genuine issue of material fact . . . exist[ed] regarding whether [the plaintiff] was assaulted and battered . . . in an attempt to prevent or dissuade him from exercising his First Amendment right to film matters of public interest")] But even if these cases could clearly establish "the right to record police activity"—a question the Court does not decide—they do not clearly establish the right to engage in the "particular conduct" at issue here. *Aldaba*, 844 at 877. The "particular conduct" at issue here is the right of an individual who is the subject of police activity to tell another individual to record that police activity. None of the cases cited by Plaintiff establishes that right. *See Sandberg v. Englewood*, 727 F. App'x 950, 963 (10th Cir. 2018) (distinguishing the out-of-circuit authority cited by Plaintiff, in part, because "[a]ll of the cases [the plaintiff] cites only involve a bystander or third party recording the police, and do not involve the person who is the subject of the police action"). As a result, Defendant is entitled to qualified immunity on Plaintiff's First Amendment retaliation claim. Accordingly, the Court GRANTS the Motion to the extent it seeks to dismiss Claim Three.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss [#15] is **GRANTED** and Claims Two and Three are **DISMISSED**.

DATED: December 21, 2021

BY THE COURT:

s/Scott T. Varholak
United States Magistrate Judge