IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00863-STV

JOHN COLLINS,

    Plaintiff,

v.

AUSTIN BARELA,

    Defendant.
_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

This matter comes before the Court on Defendant Austin Barela's Motion to Dismiss Plaintiff's Second Amended Complaint (the "Motion"). [#62] The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [##12, 13] This Court has carefully considered the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Motion is **DENIED**.

**I.   BACKGROUND**[1]

This civil action arises out of an encounter between Plaintiff John Collins and Defendant Austin Barela—a patrol officer with the City of Denver—on March 25, 2019.

---

[1] The facts are drawn from the allegations in the Second Amended Complaint [#61] (the "Complaint"), which must be taken as true when considering a motion to dismiss. *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir.2011)).

[#61] On that date, Plaintiff walked to his brother's parked car on a residential street in Denver, Colorado. [*Id.* at ¶¶ 3, 7] Plaintiff walked to the front passenger door and inspected its interior panel which needed repair. [*Id.* at ¶¶ 8-9] As Plaintiff was repairing the interior portion of the door, Defendant approached him. [*Id.* at ¶ 10] Defendant asked Plaintiff whether he had identification on him, and Plaintiff responded that he did. [*Id.* at ¶¶ 11-12] Defendant asked again whether Plaintiff had identification, at which point Plaintiff asked an acquaintance, who was inside the vehicle, to begin recording the police contact. [*Id.* at ¶¶ 13-14]

After asking the acquaintance to record the encounter, Plaintiff politely responded to Defendant that he was not doing anything but was simply fixing a door panel. [*Id.* at ¶ 14] Defendant stated that he had seen Plaintiff driving earlier in the day—implying that providing identification thus was compulsory. [*Id.* at ¶¶ 15-16] Defendant twice more asked Plaintiff for identification and then also asked Plaintiff for his name, which Plaintiff provided. [*Id.* at ¶¶ 18-19] Defendant responded by again stating that he "need[ed]" Plaintiff's identification. [*Id.* at ¶ 19] Plaintiff asked why Defendant needed his identification, and Defendant responded: "Because I just told you, for driving the car." [*Id.* at ¶ 20] Defendant explained that he had observed Plaintiff get into his vehicle at a commercial business, lawfully leave, and then park his vehicle on the street where the encounter began. [*Id.* at ¶ 21] As a result of these observations, Defendant told Plaintiff that he "need[ed]" Plaintiff's identification. [*Id.*]

Defendant then continued by stating: "I'm not gonna ask you again, man. If you don't give me your ID, I'm putting you in handcuffs." [*Id.* at ¶ 22] Plaintiff began to ask a question when Defendant "escalated the encounter, approached [Plaintiff] and his

2

acquaintance, placed his hands on [Plaintiff's] shoulders, grabbed [Plaintiff's] arms and wrists, and placed [Plaintiff] in handcuffs secured behind his back." [*Id.* at ¶ 23] As he was being placed in handcuffs, Plaintiff said that the handcuffing was for "nothing," and Defendant responded that he was handcuffing Plaintiff because Plaintiff was not providing his identification. [*Id.* at ¶¶ 26-27] At all times during the encounter, Plaintiff maintained his composure, acted respectfully, and maintained an even temperament without verbalizing any threat or disparaging comment. [*Id.* at ¶¶ 24-25]

After placing Plaintiff in handcuffs, Defendant asked Plaintiff where his identification was located and Plaintiff directed Defendant to the interior of the vehicle. [*Id.* at ¶ 28] A passenger provided Plaintiff's identification and Defendant then walked Plaintiff back to Defendant's patrol vehicle. [*Id.* at ¶¶ 28, 30] When they arrived at the patrol vehicle, Plaintiff stated that he was not doing anything but working on the door. [*Id.* at ¶ 31] Defendant responded: "Well I asked for your ID, you don't want to give ID. The only people that don't give . . . ID is people who try not to say who they are, man." [*Id.* at ¶ 32] Defendant also complained that Plaintiff had passengers in the car start recording the encounter rather than just handing Defendant his identification. [*Id.* at ¶ 35] Defendant further described Plaintiff's efforts to record the event as Plaintiff "be[ing] funny." [*Id.* at ¶¶ 37-39]

Defendant then performed an exterior search of Plaintiff's sweatpants and did not find anything. [*Id.* at ¶ 40] He then escorted Plaintiff to the back of the patrol car, stating: "It's not cool. You're not doing what I'm telling you to do. . . . If you just go here [handing identification], sir, here's my ID and I come back to the car and [it's] completely different." [*Id.* at ¶¶ 41-42] Defendant then arrested Plaintiff for failure to identify. [*Id.* at ¶ 43]

3

Ultimately, all charges against Plaintiff were dropped "due to some reasonable suspicion issues." [*Id.* at ¶ 44]

Plaintiff initiated this action on March 24, 2021. [#1] The Second Amended Complaint alleges two claims for relief, both brought pursuant to 42 U.S.C. § 1983: (1) false arrest [#61 at ¶¶ 48-50], and (2) retaliation in violation of the First Amendment [*id.* at ¶¶ 51-53]. On October 4, 2022, Defendant filed the instant Motion seeking to dismiss both claims. [#62] Plaintiff has responded to the Motion [#69] and Defendant has replied [#70].

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242,

1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).  "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556).  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

### III.  ANALYSIS

Through the Motion, Defendant seeks dismissal of both claims asserted in the Second Amended Complaint. [#62]  Specifically, Defendant maintains that he is entitled to qualified immunity both because he did not violate Plaintiff's constitutional rights and because, assuming he did violate Plaintiff's constitutional rights, those rights were not clearly established.  [*Id.*]  The Court begins by setting forth the legal standard for the application of the qualified immunity doctrine and then applies this doctrine to Plaintiff's claims.

#### A.  Qualified Immunity

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted).  Once a defense of qualified immunity is asserted, "the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, *and* (2) that the right was "clearly established" at the time of the challenged conduct.'" *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (emphasis in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).  "If

5

the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001).

The requirement that the right be clearly established presents a "demanding standard" intended to ensure the protection of "all but the plainly incompetent or those who knowingly violate the law." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In determining whether the constitutional right was clearly established at the time of the misconduct, the Tenth Circuit has explained:

> A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. Although plaintiffs can overcome a qualified-immunity defense without a favorable case directly on point, existing precedent must have placed the statutory or constitutional question beyond debate. The dispositive question is whether the violative nature of the *particular conduct* is clearly established. In the Fourth Amendment context, the result depends very much on the facts of each case, and the precedents must squarely govern the present case.

*Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (quotations and citations omitted). The Supreme Court has "not yet decided what precedents—other than [its] own—qualify as controlling authority for purposes of qualified immunity." *Wesby*, 138 S. Ct. at 591 n.8. The Tenth Circuit, however, has stated that "[o]rdinarily this standard requires either that there is a Supreme Court or Tenth Circuit decision on point, or that the 'clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains.'" *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017) (quoting *Klen v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011)).

The Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question

6

whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 138 S. Ct. at 590 (quotation omitted). "[T]he 'specificity' of the rule is especially important in the Fourth Amendment context." *Id.* (quotation omitted).

### B. Claim One – False Arrest

"Section 1983 provides a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' by any person acting under color of state law." *Pierce v. Gilchrist*, 359 F.3d 1279, 1285 (10th Cir. 2004) (quoting 42 U.S.C. § 1983). Courts "use[ ] the common law of torts as a 'starting point' for determining the contours of claims of constitutional violations under § 1983." *Id.* at 1286. However, "[a]lthough the common law tort serves as an important guidepost for defining the constitutional cause of action, the ultimate question is always whether the plaintiff has alleged a constitutional violation." *Id.* at 1289.

Colorado common law prescribes only three elements for a claim of false arrest: "(1) The defendant intended to restrict the plaintiff's freedom of movement; (2) The defendant, directly or indirectly, restricted the plaintiff's freedom of movement for a period of time, no matter how short; and (3) The plaintiff was aware that [his] freedom of movement was restricted." Colo. Jury Instr.-Civ. ("CJI-Civ.") § 21:1 (2022). Even if these three elements are met, Defendants can defeat a false arrest claim if there was probable cause for the arrest.[2]

---

[2] Under Colorado common law, lack of probable cause is not an element of the false arrest claim but instead is considered in connection with the affirmative defense of privilege. *See Carani v. Meisner*, No. 08-cv-02626-MSK-CBS, 2010 WL 3023805, at *5 (citing CJI-Civ. § 21:11 ("Privilege of Peace Officer to Arrest without a Warrant")). The Court acknowledges, however, that the common law serves only as "a guidepost for defining the constitutional cause of action," *Pierce*, 359 F.3d at 1289, and the Tenth Circuit has often defined a claim for false arrest under Section 1983 simply as an arrest made

7

"A warrantless arrest is [constitutionally] permissible when an officer has probable cause to believe that the arrestee committed a crime." *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1256 (10th Cir. 1998). "Probable cause exists where the facts and circumstances within the arresting officer's knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to have the belief that an offense has been or is being committed by the person to be arrested." *United States v. Alonso*, 790 F.2d 1489, 1496 (10th Cir. 1986). The determination of probable cause is based upon "the totality of the circumstances," *Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir. 2007), and "the reasonable conclusions that could have been drawn based on the facts known to the officer at the time of the arrest," *Spalsbury v. Sisson*, 250 F. App'x 238, 245 (10th Cir. 2007). "Neither the officer's subjective beliefs nor information gleaned post-hoc bear on [the probable cause] inquiry." *A.M. v. Holmes*, 830 F.3d 1123, 1139 (10th Cir. 2016) (quotation omitted).

---

without probable cause. *See, e.g.*, *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012) ("In the context of a false arrest claim, an arrestee's constitutional rights were violated if the arresting officer acted in the absence of probable cause that the person had committed a crime"); *Cottrell v. Kaysville City*, 994 F.2d 730, 733 (10th Cir. 1993) ("A plaintiff may recover damages under § 1983 for wrongful arrest if she shows she was arrested without probable cause."). Although this would indicate that lack of probable cause is an element of the claim that must be alleged and proven by the plaintiff, in other decisions, the Tenth Circuit has indicated that the defendant has the burden of proving probable cause for the arrest. *See Karr v. Smith*, 774 F.2d 1029, 1031 (10th Cir. 1985) ("The burden of going forward with evidence establishing the existence of probable cause is on the defendant in a 1983 action."); *Martin v. Duffie*, 463 F.2d 464, 468 (10th Cir. 1972) (holding that defenses of good faith and privilege available at common law are available in Section 1983 cases, but "must be put forward by the officers as defenses"). For purposes of deciding Defendant's Motion, however, the Court need not resolve whether probable cause is an essential element of the claim on which Plaintiff bears the burden of proof or whether it is an affirmative defense on which Defendant bears the burden of proof. Even if construed as an affirmative defense, Defendant has argued that probable cause existed. [#62 at 8-9]

Where, as here, an officer has asserted the defense of qualified immunity, "a section 1983 plaintiff [must] show that it would have been clear to a reasonable officer that probable cause was lacking under the circumstances." *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012) (internal quotation omitted). The Tenth Circuit has "implement[ed] this standard by asking whether there was 'arguable probable cause' for an arrest." *Id.* Thus, the Court must determine whether Defendant had arguable probable cause to "demand[] [Plaintiff's] identification . . . and then arrest[] [Plaintiff] for not complying." [#61, ¶ 50]

Defendant argues that he had initially stopped Plaintiff based upon the excessive tint of the automobile windows, in violation of Colo. Rev. Stat. § 42-4-227. [#62, 6-8] Based upon the excessive tint, Defendant argues that he had the authority to require Plaintiff to show his identification pursuant to Colo. Rev. Stat. § 16-3-103. [*Id.* at 8] According to Defendant, when Plaintiff refused to provide that identification, Defendant had probable cause to arrest Plaintiff for that refusal. [*Id.* at 8-9]

Colo. Rev. Stat. § 42-4-227 prohibits the "operat[ion] [of] a motor vehicle registered in Colorado" whose windshield or windows allow less than certain percentages of light transmittance. Colo. Rev. Stat. § 16-3-103 provides that a "peace officer may stop any person who he reasonably suspects is committing, has committed, or is about to commit a crime and may require him to give his name and address, identification if available, and an explanation of his actions." Thus, if Defendant reasonably suspected that Plaintiff was operating a vehicle in violation of Section 42-4-227, he could have demanded Plaintiff produce his identification, if available.

The problem with Defendant's argument is that the Complaint never alleges that Plaintiff was actually operating the vehicle. [*See* #61] Nor does the video footage submitted by Defendant show Plaintiff operating the vehicle. [*See* #62-3] According to the Complaint, when Defendant told Plaintiff he saw him driving earlier in the day, Defendant "made this statement to compel [Plaintiff] to provide identification by wrongly implying that identification was compulsory." [#61, ¶¶ 15-16] Though it could be more explicit, a plausible reading of this allegation is that Defendant had not seen Plaintiff driving earlier in the day, and thus could not have seen Plaintiff violate Section 42-4-227. This plausible inference is strengthened by Plaintiff's statement to Defendant that he was "not doing anything but fixing a door panel." [*Id.* at ¶ 15] And, finally, the Complaint alleges that all charges were dropped against Plaintiff "due to some reasonable suspicion issues." [*Id.* at ¶ 44] Based upon all of these allegations, one can reasonably infer that Defendant never observed Plaintiff driving the vehicle.[3] And if Plaintiff was not observed actually operating the vehicle, Defendant lacked even arguable probable cause to believe that Plaintiff violated Section 42-4-227. Without a violation of Section 42-4-227, Plaintiff had no obligation to show his identification pursuant to Section 16-3-103, and Defendant lacked arguable probable cause to believe Plaintiff violated that statute. Accordingly, the Motion is DENIED to the extent it seeks to dismiss Claim One.

---

[3] In his response, Plaintiff argues that Defendant "made up facts to manufacture[] reasonable suspicion *post facto*." [#69 at 4] But this allegation is not included in the Complaint and Plaintiff "may not effectively amend [his] Complaint by alleging new facts in [his] response to a motion to dismiss." *In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004). Nonetheless, for the reasons set forth herein, the Court does believe that those facts actually alleged within the Complaint could plausibly lead to the conclusion that Defendant did not observe Plaintiff driving the vehicle and "made up [that] fact[] to manufacture[] reasonable suspicion *post facto*."

### C. Claim Two – First Amendment Retaliation

To state a First Amendment retaliation claim against a government official, a plaintiff must prove three elements:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). Defendant challenges the first element of Plaintiff's retaliation claim.[4] [#62 at 11] According to Defendant, Plaintiff has not alleged that either he or his acquaintance ever recorded Defendant, and thus Plaintiff has not alleged that he engaged in protected activity. [*Id.*] The Court disagrees.

The Tenth Circuit has held that an individual is engaged in constitutionally protected activity when they film police activity, subject to reasonable restrictions. *Irizarry v. Yehia*, 38 F.4th 1282, 1289 (10th Cir. 2022). In doing so, the Tenth Circuit relied upon an Eleventh Circuit case in which an individual alleged that city police prevented the plaintiff and his wife from filming police officers. *Id.* at 1290 (citing *Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000)). Thus, actual recording was not necessary to establish the protected activity. And to hold otherwise would lead to an absurd result— constitutional protection would extend to the individual who was able to record the police activity, but not to the individual whose attempts to record the activity were thwarted by

---

[4] Defendant also argues that Plaintiff's First Amendment retaliation claim fails because there was probable cause for Plaintiff's arrest. [#62 at 10-11] As explained above, Plaintiff has plausibly alleged the lack of probable cause and, as a result, this argument fails. *See supra* Section III.B.

11

the officers. Accordingly, the Court does not find constitutional significance in the fact that neither Defendant nor his acquaintance actually recorded the incident.

Nor does the Court find constitutional significance in the fact that Plaintiff asked his acquaintance to record the incident, as opposed to recording the incident himself. A hypothetical explains why. Assume a police officer is using excessive force while handcuffing the driver of a vehicle. As *Irizarry* makes clear, the passenger has a First Amendment right to film the officer's conduct. 38 F. 4th at 1289. It would be an absurd result to say that the driver, who is the victim of the excessive force but is unable to personally film the officer's conduct due to the officer's excessive force, does not engage in constitutionally protected conduct when he asks the passenger to record the officer's conduct.

Thus, the Court finds that Plaintiff has successfully pled a First Amendment retaliation claim.[5] But this does not end the inquiry because Defendant also argues that he is entitled to qualified immunity because the constitutional right at issue was not clearly established. Once again, the Court disagrees.

---

[5] In his Motion, Defendant did not challenge the second or third elements of Plaintiff's retaliation claim. [#62 at 11] In his reply, Defendant argues that the video shows that he was aloof to Plaintiff's statement that Plaintiff was filming, and that had the arrest been motivated by the filming, Defendant would have arrested Plaintiff immediately. [#70 at 9] This argument appears to challenge the third element of Plaintiff's retaliation claim. But, this argument was not made in the Motion, and "arguments raised for the first time in a reply brief are generally deemed waived." *United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011). But even were the Court to consider this argument, the argument would require the Court to engage in a factual inquiry into Defendant's motivations, which the Court cannot do on a motion to dismiss. *Casanova*, 595 F.3d at 1124 (In deciding a motion under Rule 12(b)(6), a court "must accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." (quotation omitted)); *Tal v. Hogan*, 453 F.3d 1244, 1266 (10th Cir. 2006) ("Rule 12(b)(6) motions to dismiss are not designed to weigh evidence or consider the truth or falsity of an adequately pled complaint.").

In *Irizarry*, the Tenth Circuit held that the right to film police activity, subject to reasonable restrictions, was clearly established as of May 2019. 38 F.4th at 1294-95. In so holding, the Tenth Circuit relied upon a Tenth Circuit decision from 2017 and six decisions from other circuits, all of which predated the incidents in this case. *Id.* at 1290-92, 1294-95 (citing *W. Watersheds Project v. Michael*, 869 F.3d 1189 (10th Cir. 2017); *Turner v. Lieutenant Driver*, 848 F.3d 678 (5th Cir. 2017); *Fields v. City of Philadelphia*, 862 F.3d 353 (3d Cir. 2017); *ACLU of Ill. v. Alvarez*, 679 F.3d 583 (7th Cir. 2012); *Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011); *Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000); *Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995)). Thus, the right to film police conduct, subject to reasonable restrictions, was clearly established as of March 25, 2019.

Defendant nonetheless argues that "Plaintiff can point to no particularized case law which puts beyond debate that telling an acquaintance to record—who never actually records—is protected activity under the First Amendment." [#62 at 12] But, once again, the Court is not persuaded by Defendant's distinctions. "To determine whether the law is clearly established, the relevant precedent is considered on point if it involves *materially similar conduct* or applies with *obvious clarity* to the conduct at issue." *Irizarry*, 38 F.4th at 1294 (quotation omitted) (emphasis in original). For the reasons outlined above, the Court does not find the distinctions identified by Defendant—that actual recording did not occur and that Plaintiff asked his acquaintance to record the police activity as opposed to recording it himself—to be materially different conduct than that identified in *Irizarry*. Accordingly, the Motion is DENIED to the extent it seeks to dismiss Claim Two.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint [#62] is **DENIED**.  A status conference is set for May 9, 2023 at 11:30 a.m.

DATED:  April 17, 2023                                              BY THE COURT:

s/Scott T. Varholak<br>
United States Magistrate Judge